STATE OF MAINE                                          SUPERIOR COURT
CUMBERLAND, ss.                                         CIVIL ACTION
                                                        Docket No.: 04-CV-782



Joseph Kumiszcza, Jr., and Pamela Murphy,
as personal representatives of the Estate of
Joseph Kumiszcza, and Evelyn Kumiszcza,

        Plaintiffs

                                                **DECISION AND ORDER**
        v.                                            (DeZurik)


Tri-State Packing Supply, et al.,

        Defendants


In this action, Plaintiffs seek to recover for damages allegedly resulting from the death of Joseph Kumiszcza, due to his exposure to asbestos during the course of his employment with Central Maine Power Company. Plaintiffs allege that as the result of exposure to products manufactured or supplied by Defendant DeZurik, the decedent contracted asbestos-related illnesses, which ultimately resulted in his death. This matter is before the Court on Defendant DeZurik's motion for summary judgment.

## I. Summary Judgment Standard of Review

M.R. Civ. P. 56(c) provides that summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, . . . show that there is no genuine issue as to any material fact . . . and that [the] moving party is entitled to a judgment as a matter of law." M.R. Civ. P. 56(c). For purposes of summary judgment, a "material fact is one having the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575. "A genuine issue of material fact exists when there is sufficient evidence to require a fact-finder to choose between competing versions of the truth at trial." *Lever v. Acadia Hosp. Corp.*, 2004 ME 35, ¶ 2, 845 A.2d 1178, 1179. If ambiguities in the facts exist,

1

they must be resolved in favor of the non-moving party. *Beaulieu v. Aube Corp.*, 2002 ME 79, ¶ 2, 796 A.2d 683, 685.

To avoid summary judgment, a plaintiff must establish a *prima facie* case for each element of the cause of action. *See Barnes v. Zappia*, 658 A.2d 1086, 1089 (Me. 1995). In *Arrow Fastener Co. v. Wrabacon, Inc.*, 2007 ME 34, 917 A.2d 123, the Law Court observed:

> [A]lthough summary judgment is no longer an extreme remedy, it is not a substitute for trial. It is, at base, "simply a procedural device for obtaining judicial resolution of those maters that may be decided without factfinding." If facts material to the resolution of the matter have been properly placed in dispute, summary judgment based on those facts is not available except in those instances where the facts properly proffered would be flatly insufficient to support a judgment in favor of the nonmoving party as a matter of law.

*Id.* ¶ 18, 917 A.2d at 127 (citations omitted) (quoting *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18, 21-22).

The opposing party to a summary judgment motion is given the benefit of any inferences which might be reasonably drawn from the evidence. *See Porter*, 2001 ME 158, ¶ 9, 784 A.2d at 22. However, neither party can rely on unsubstantiated denials, but "must identify specific facts derived from the pleadings, depositions, answers to interrogatories, admissions and affidavits to demonstrate either the existence or absence of an issue of fact." *Kenny v. Dep't of Human Servs.*, 1999 ME 158, ¶ 3, 740 A.2d 560, 562 (quoting *Vinick v. Comm'r of Internal Revenue*, 110 F.3d 168, 171 (1st Cir. 1997)).

## II. Causation Standard

In this case, Plaintiff asserts claims of negligence and strict liability. For Plaintiff to prevail, Plaintiff must demonstrate, among other elements, that Defendant's conduct caused the damages for which Plaintiff seeks to recover. In Maine, to prove causation, a plaintiff must prove that the defendant's conduct "is a *substantial factor* in bringing about the harm." *Spickler v. York*, 566 A.2d 1385, 1390 (Me. 1989); *see also Wing v. Morse*, 300 A.2d 491, 495-96 (Me. 1973). On Defendant's motion for summary judgment, the

question is, therefore, whether a material issue of fact remains for trial as to Plaintiff's allegation that Defendant's conduct or product caused Plaintiff's damages.

As asbestos litigation has evolved both nationally and within Maine, the level of proof necessary to establish the requisite relationship between the plaintiff's injuries and the defendant's product has been the subject of much debate. A majority of jurisdictions have adopted the standard articulated by the court in *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156 (4th Cir. 1986), where the court construed the "substantial factor" test of the Restatement (Second) of Torts.[1] In *Lohrmann*, the court announced and applied the "frequency, regularity and proximity test," which requires a plaintiff to "prove more than a casual or minimum contact with the product" that contains asbestos. *Id.* at 1162. Rather, under *Lohrmann*, a plaintiff must present "evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked." *Id.* at 1162-63. *Lohrmann* suggests that the Court engage in a quantitative analysis of a party's exposure to asbestos in order to determine whether, as a matter of law, the party can prevail.

Although the Maine Law Court has not addressed the issue, at least one Justice of the Maine Superior Court has expressly rejected the *Lohrmann* standard. Justice Ellen Gorman rejected the *Lohrmann* standard "[b]ecause it is entirely the jury's function to determine if the conduct of the defendant was a substantial factor in causing the plaintiff's injury and because it is not appropriate for the court to determine whether a plaintiff has proven that a defendant's product proximately caused the harm." *Campbell v. H.B. Smith Co.*, LINSC-CV-04-57, at 7 (Me. Super. Ct., Lin. Cty., Apr. 2, 2007) (Gorman, J.).[2] In rejecting the *Lohrmann* standard, Justice Gorman wrote that to establish a *prima facie* case, a plaintiff must demonstrate:

---

[1] The Restatement (Second) of Torts is consistent with the causation standard in Maine. Section 431 provides in pertinent part that "[t]he actor's negligent conduct is a legal cause of harm to another if . . . his conduct is a substantial factor in bringing about the harm." RESTATEMENT (SECOND) OF TORTS § 431.

[2] Justice Gorman also rejected the *Lohrmann* standard for similar reasons in *Boyden v. Tri-State Packing Supply*, CUMSC-CV-04-452 (Me. Super. Ct., Cum. Cty., Feb. 28, 2007) and *Buck v. Eastern Refractories, Co.*, OXFSC-CV-04-15 (Me. Super. Ct., Oxf. Cty., July 23, 2007).

(1) "medical causation" — that the plaintiff's exposure to the defendant's product was a substantial factor in causing the plaintiff's injury and (2) product nexus — that the defendant's asbestos-containing product was *at the site where the plaintiff worked or was present, and that the plaintiff was in proximity to that product at the time it was being used* . . . a plaintiff must prove not only that the asbestos products were used at the worksite, but that the employee inhaled the asbestos from the defendant's product.

*Campbell,* at 7 (citing 63 AM. JUR. 2D *Products Liability* § 70 (2001)).

Insofar as under *Lohrmann* a plaintiff must prove exposure to asbestos over a sustained period of time, while under the standard applied by Justice Gorman a plaintiff must only demonstrate that plaintiff was in proximity to the product at the time that it was being used, the *Lohrmann* standard imposes a higher threshold for claimants. The Court's decision as to the applicable standard cannot, however, be controlled by the standard's degree of difficulty. Instead, the standard must be consistent with basic principles of causation. In this regard, the Court agrees with the essence of Justice Gorman's conclusion—to require a quantitative assessment of a plaintiff's exposure to asbestos, as contemplated by *Lohrmann,* would usurp the fact finder's province. Whether a defendant's conduct caused a particular injury is at its core a question of fact. *See Tolliver v. Dep't of Transp.,* 2008 ME 83, ¶ 42, 948 A.2d 1223, 1236; *Houde v. Millett,* 2001 ME 183, ¶ 11, 787 A.2d 757, 759. The Court perceives of no basis in law to deviate from this longstanding legal principle. The Court, therefore, concludes that in order to avoid summary judgment, in addition to producing evidence of medical causation, a plaintiff must establish the product nexus through competent evidence. In particular, a plaintiff must demonstrate that: (1) the defendant's product was at the plaintiff's work place, (2) the defendant's product at the plaintiff's work place contained asbestos, and (3) the plaintiff had personal contact with asbestos from the defendant's product.[3] If a plaintiff produces such evidence, which can be either direct or

---

[3] The Court recognizes that in many of the asbestos-related cases, the plaintiff asserts the claim, at least in part, on behalf of the estate of a person who was allegedly exposed to asbestos. In those cases, the plaintiff would be required to demonstrate that defendant's asbestos-containing product was present at the decedent's work place, and that the decedent had contact with the product.

circumstantial, the question of whether the defendant's product was a "substantial factor" in causing the plaintiff's damages is for the jury.[4]

## III. Discussion

In support of their contention that Defendant DeZurik is legally responsible for the decedent's illness and death, Plaintiffs rely on the testimony of several former employees of Central Maine Power Company, the decedent's employer, as well as information contained in various documents. For purposes of this motion, Plaintiffs have established that: (1) the decedent worked at Central Maine Power Company's Wyman Station, (2) the Defendant DeZurik manufactured valves, some of which might have been present at the Wyman Station during the time of the decedent's employment, (3) there were "thousands" of valves located at the Wyman Station, which valves were manufactured by a number of different entities, (4) asbestos-containing material might have been used to pack some of the valves at the Wyman Station, (5) the decedent packed and repacked some of the valves during maintenance periods at the Wyman Station.

To avoid summary judgment, Plaintiffs must produce evidence from which a reasonable fact finder could conclude that the decedent had contact with an asbestos-containing product manufactured by Defendant DeZurik. Plaintiffs have produced no direct evidence to establish that the decedent had any contact with DeZurik valves. In other words, the record lacks any evidence from which a fact finder could conclude that the decedent worked on or in the vicinity of valves that Defendant DeZurik manufactured. Similarly, Plaintiffs have not produced circumstantial evidence from which a fact finder could determine that the decedent had contact with DeZurik valves. Even if a fact finder could reasonably conclude that the decedent was exposed to

---

[4] The Court notes that the causation standard applied by Justice Gorman in *Campbell*, *Boyden*, and *Buck* may not be entirely equivalent with that employed in *Bessey v. Eastern Refractories, Inc.*, SAGSC-CV-99-001, 99-020, 99-035, 99-041, 99-050, and 00-001 (Me. Sup. Ct., Sag. Cty., Feb. 19, 2002) (Bradford, J.), an earlier case in which the Superior Court addressed the issue. While *Bessey* also rejected the *Lohrmann* standard and utilized the "medical causation/product nexus" framework described in 63 AM. JUR. 2D *Products Liability* § 70, *Bessey* arguably imposes a different factual burden to establish causation at the summary judgment stage. Without affirmatively adopting either the "*Bessey* Standard" or the standard articulated by Justice Gorman in *Campbell*, *Boyden*, and *Buck*, the Court will analyze the causation issue in a manner consistent with established causation principles set forth by the Law Court. *See, e.g., Spickler*, 566 A.2d at 1390; *Morse*, 300 A.2d at 495-96.

asbestos-containing valves, a fact finder could not, on this record, conclude that the Defendant manufactured or supplied the valves with which the decedent had contact. Had Defendant DeZurik been the sole provider of valves to the Wyman Station, Plaintiffs might have been able to satisfy their burden through circumstantial evidence. However, "thousands" of valves manufactured by a number of different entities were used at Wyman Station during the course of the decedent's employment. Thus, even though at least one witness (Merrill Fogg) testified that the decedent would pack and repack valves during maintenance periods at Wyman Station, given the number of valves and the number of valve manufacturers, a fact finder could only speculate as to whether the decedent had contact with a DeZurik valve, which speculation would be impermissible. Plaintiffs cannot, therefore, as a matter of law, prevail on their claims.

## IV. Conclusion

Based on the foregoing analysis, the Court grants the Motion for Summary Judgment of Defendant DeZurik.


The entry is:

> The Defendant's motion for summary judgment is GRANTED.
> Judgment is entered in favor of the Defendant on all counts.


Pursuant to M.R. Civ. P. 79(a), the Clerk shall incorporate this Decision and Order into the docket by reference.

Dated: 4/24/09

Justice, Maine Superior Court

6

STATE OF MAINE                                        SUPERIOR COURT
CUMBERLAND, ss.                                                           CIVIL ACTION
                                                                         Docket No.: 04-CV-782

Joseph Kumiszcza, Jr., and Pamela Murphy,
as personal representatives of the Estate of
Joseph Kumiszcza, and Evelyn Kumiszcza,

    Plaintiffs

                                      **DECISION AND ORDER**
    v.                                        (WLB Holding)

Tri-State Packing Supply, et al.,

    Defendants

    In this action, Plaintiffs seek to recover for damages allegedly resulting from the death of Joseph Kumiszcza, due to his exposure to asbestos during the course of his employment with Central Maine Power Company. Plaintiffs allege that as the result of exposure to products manufactured or supplied by Defendant WLB Holding, f/k/a, W.L. Blake & Company (WLB Holding), the decedent contracted asbestos-related illnesses, which ultimately resulted in his death. This matter is before the Court on Defendant WLB Holding's motion for summary judgment.

## I. Summary Judgment Standard of Review

    M.R. Civ. P. 56(c) provides that summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, . . . show that there is no genuine issue as to any material fact . . . and that [the] moving party is entitled to a judgment as a matter of law." M.R. Civ. P. 56(c). For purposes of summary judgment, a "material fact is one having the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575. "A genuine issue of material fact exists when there is sufficient evidence to require a fact-finder to choose between competing versions of the truth at trial." *Lever v. Acadia Hosp. Corp.*, 2004 ME 35, ¶ 2, 845 A.2d 1178, 1179. If ambiguities in the facts exist,

1

they must be resolved in favor of the non-moving party. *Beaulieu v. Aube Corp.*, 2002 ME 79, ¶ 2, 796 A.2d 683, 685.

To avoid summary judgment, a plaintiff must establish a *prima facie* case for each element of the cause of action. *See Barnes v. Zappia*, 658 A.2d 1086, 1089 (Me. 1995). In *Arrow Fastener Co. v. Wrabacon, Inc.*, 2007 ME 34, 917 A.2d 123, the Law Court observed:

> [A]lthough summary judgment is no longer an extreme remedy, it is not a substitute for trial. It is, at base, "simply a procedural device for obtaining judicial resolution of those maters that may be decided without factfinding." If facts material to the resolution of the matter have been properly placed in dispute, summary judgment based on those facts is not available except in those instances where the facts properly proffered would be flatly insufficient to support a judgment in favor of the nonmoving party as a matter of law.

*Id.* ¶ 18, 917 A.2d at 127 (citations omitted) (quoting *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18, 21-22).

The opposing party to a summary judgment motion is given the benefit of any inferences which might be reasonably drawn from the evidence. *See Porter*, 2001 ME 158, ¶ 9, 784 A.2d at 22. However, neither party can rely on unsubstantiated denials, but "must identify specific facts derived from the pleadings, depositions, answers to interrogatories, admissions and affidavits to demonstrate either the existence or absence of an issue of fact." *Kenny v. Dep't of Human Servs.*, 1999 ME 158, ¶ 3, 740 A.2d 560, 562 (quoting *Vinick v. Comm'r of Internal Revenue*, 110 F.3d 168, 171 (1st Cir. 1997)).

## II. Causation Standard

In this case, Plaintiff asserts claims of negligence and strict liability. For Plaintiff to prevail, Plaintiff must demonstrate, among other elements, that Defendant's conduct caused the damages for which Plaintiff seeks to recover. In Maine, to prove causation, a plaintiff must prove that the defendant's conduct "is a *substantial factor* in bringing about the harm." *Spickler v. York*, 566 A.2d 1385, 1390 (Me. 1989); *see also Wing v. Morse*, 300 A.2d 491, 495-96 (Me. 1973). On Defendant's motion for summary judgment, the

2

question is, therefore, whether a material issue of fact remains for trial as to Plaintiff's allegation that Defendant's conduct or product caused Plaintiff's damages.

As asbestos litigation has evolved both nationally and within Maine, the level of proof necessary to establish the requisite relationship between the plaintiff's injuries and the defendant's product has been the subject of much debate. A majority of jurisdictions have adopted the standard articulated by the court in *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156 (4th Cir. 1986), where the court construed the "substantial factor" test of the Restatement (Second) of Torts.[1] In *Lohrmann*, the court announced and applied the "frequency, regularity and proximity test," which requires a plaintiff to "prove more than a casual or minimum contact with the product" that contains asbestos. *Id.* at 1162. Rather, under *Lohrmann*, a plaintiff must present "evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked." *Id.* at 1162-63. *Lohrmann* suggests that the Court engage in a quantitative analysis of a party's exposure to asbestos in order to determine whether, as a matter of law, the party can prevail.

Although the Maine Law Court has not addressed the issue, at least one Justice of the Maine Superior Court has expressly rejected the *Lohrmann* standard. Justice Ellen Gorman rejected the *Lohrmann* standard "[b]ecause it is entirely the jury's function to determine if the conduct of the defendant was a substantial factor in causing the plaintiff's injury and because it is not appropriate for the court to determine whether a plaintiff has proven that a defendant's product proximately caused the harm." *Campbell v. H.B. Smith Co.*, LINSC-CV-04-57, at 7 (Me. Super. Ct., Lin. Cty., Apr. 2, 2007) (Gorman, J.).[2] In rejecting the *Lohrmann* standard, Justice Gorman wrote that to establish a *prima facie* case, a plaintiff must demonstrate:

---

[1] The Restatement (Second) of Torts is consistent with the causation standard in Maine. Section 431 provides in pertinent part that "[t]he actor's negligent conduct is a legal cause of harm to another if . . . his conduct is a substantial factor in bringing about the harm." RESTATEMENT (SECOND) OF TORTS § 431.

[2] Justice Gorman also rejected the *Lohrmann* standard for similar reasons in *Boyden v. Tri-State Packing Supply*, CUMSC-CV-04-452 (Me. Super. Ct., Cum. Cty., Feb. 28, 2007) and *Buck v. Eastern Refractories, Co.*, OXFSC-CV-04-15 (Me. Super. Ct., Oxf. Cty., July 23, 2007).

3

(1) "medical causation" — that the plaintiff's exposure to the defendant's product was a substantial factor in causing the plaintiff's injury and (2) product nexus — that the defendant's asbestos-containing product was *at the site where the plaintiff worked or was present, and that the plaintiff was in proximity to that product at the time it was being used* . . . a plaintiff must prove not only that the asbestos products were used at the worksite, but that the employee inhaled the asbestos from the defendant's product.

*Campbell*, at 7 (citing 63 AM. JUR. 2D *Products Liability* § 70 (2001)).

Insofar as under *Lohrmann* a plaintiff must prove exposure to asbestos over a sustained period of time, while under the standard applied by Justice Gorman a plaintiff must only demonstrate that plaintiff was in proximity to the product at the time that it was being used, the *Lohrmann* standard imposes a higher threshold for claimants. The Court's decision as to the applicable standard cannot, however, be controlled by the standard's degree of difficulty. Instead, the standard must be consistent with basic principles of causation. In this regard, the Court agrees with the essence of Justice Gorman's conclusion—to require a quantitative assessment of a plaintiff's exposure to asbestos, as contemplated by *Lohrmann*, would usurp the fact finder's province. Whether a defendant's conduct caused a particular injury is at its core a question of fact. *See Tolliver v. Dep't of Transp.*, 2008 ME 83, ¶ 42, 948 A.2d 1223, 1236; *Houde v. Millett*, 2001 ME 183, ¶ 11, 787 A.2d 757, 759. The Court perceives of no basis in law to deviate from this longstanding legal principle. The Court, therefore, concludes that in order to avoid summary judgment, in addition to producing evidence of medical causation, a plaintiff must establish the product nexus through competent evidence. In particular, a plaintiff must demonstrate that: (1) the defendant's product was at the plaintiff's work place, (2) the defendant's product at the plaintiff's work place contained asbestos, and (3) the plaintiff had personal contact with asbestos from the defendant's product.[3] If a plaintiff produces such evidence, which can be either direct or

---

[3] The Court recognizes that in many of the asbestos-related cases, the plaintiff asserts the claim, at least in part, on behalf of the estate of a person who was allegedly exposed to asbestos. In those cases, the plaintiff would be required to demonstrate that defendant's asbestos-containing product was present at the decedent's work place, and that the decedent had contact with the product.

4

circumstantial, the question of whether the defendant's product was a "substantial factor" in causing the plaintiff's damages is for the jury.[4]

## III. Discussion

In support of their contention that Defendant WLB Holding is legally responsible for the decedent's illness and death, Plaintiffs rely on the testimony of several former employees of Central Maine Power Company, the decedent's employer, as well as information contained in various documents. For purposes of this motion, Plaintiffs have established that: (1) the decedent worked at Central Maine Power Company's Wyman Station, (2) the Defendant WLB Holding was a supplier of pumps, valves, gaskets, pipe covering, rope and cement, and supplied some of these products to Central Maine Power Company, some of which might have been present at the Wyman Station during the time of the decedent's employment, (3) some of the products supplied by Defendant WLB Holding to Central Maine Power Company contained asbestos, and (4) at times, the decedent worked in and around some equipment that contained asbestos material.

To avoid summary judgment, Plaintiffs must produce evidence from which a reasonable fact finder could conclude that the decedent had contact with an asbestos-containing product supplied by Defendant WLB Holding. Here, Plaintiffs have produced no direct evidence to establish that the decedent had any contact with products supplied by Defendant WLB Holding. That is, Plaintiffs have failed to produce any witnesses who can testify that the decedent worked on or in the vicinity of products that Defendant WLB Holding supplied. Rather, Plaintiffs rely upon circumstantial evidence to support their claim. More specifically, Plaintiffs apparently argue that because WLB Holding supplied numerous asbestos-containing items to Central Maine Power Company, the decedent

---

[4] The Court notes that the causation standard applied by Justice Gorman in *Campbell, Boyden,* and *Buck* may not be entirely equivalent with that employed in *Bessey v. Eastern Refractories, Inc.,* SAGSC-CV-99-001, 99-020, 99-035, 99-041, 99-050, and 00-001 (Me. Sup. Ct., Sag. Cty., Feb. 19, 2002) (Bradford, J.), an earlier case in which the Superior Court addressed the issue. While *Bessey* also rejected the *Lohrmann* standard and utilized the "medical causation/product nexus" framework described in 63 AM. JUR. 2D *Products Liability* § 70, *Bessey* arguably imposes a different factual burden to establish causation at the summary judgment stage. Without affirmatively adopting either the "*Bessey* Standard" or the standard articulated by Justice Gorman in *Campbell, Boyden,* and *Buck,* the Court will analyze the causation issue in a manner consistent with established causation principles set forth by the Law Court. *See, e.g., Spickler,* 566 A.2d at 1390; *Morse,* 300 A.2d at 495-96.

might have had contact with at least some of the products. Perhaps if the record established that WLB Holding was the exclusive supplier of a particular product, or that WLB Holding supplied a very large percentage of a particular product, the Court could be persuaded that a fact finder could reasonably conclude that the decedent's contact with a product supplied by Defendant WLB Holding was inevitable. However, the record contains no such evidence. In short, there is no record evidence to establish that any asbestos-containing products that Defendant sold to Central Maine Power were located at Wyman Station. Under these circumstances, a fact finder would have to speculate as to whether the decedent had contact with a product supplied by Defendant WLB Holding.

## IV. Conclusion

Based on the foregoing analysis, the Court grants the Motion for Summary Judgment of Defendant WLB Holding.

The entry is:

The Defendant's motion for summary judgment is GRANTED.
Judgment is entered in favor of the Defendant on all counts.

Pursuant to M.R. Civ. P. 79(a), the Clerk shall incorporate this Decision and Order into the docket by reference.

Dated: 4/24/09

Justice, Maine Superior Court

6

JAMES BEDORTHA ESQ
GOLDBERG PERSLEY AND WHITE
1030 5TH AVENUE      3RD FLOOR
PITTSBURG PA 15219-6295

*-Plaintiff*

one 04112-0287

JON HADDOW ESQ
PO BOX 738
BANGOR ME 04402

*-Metro-Life*

< OF COURTS
)erland County
O. Box 287
Maine 04112-0287

R BART TOTTEN ESQ
2300 FINANCIAL PL
PROVIDENCE RI 02903

*Bayer*

ox 287
ne 04112-0287

ELIZABETH STOUDER ESQ
PO BOX 9545
PORTLAND ME 04112

Viacom

. Box 287
laine 04112-0287

SUZANNE RAUDENBUCH ESQ
MCCARTER AND ENGLISH LLP
CITY PLACE 1 185 ASYLUM STREET
HARTFORD CT 06103

Gen. Elec Co

a County
x 287
e 04112-0287

CHRISTOPHER AD HUNT ESQ
MCCARTER AND ENGLISH
225 FRANKLIN STREET
BOSTON MA 02110

Gen Elec Co

JOHN RICH ESQ
PO BOX 426
PORTLAND ME 04112

Crane Valve

Maine 04112-0287

STEVEN WRIGHT ESQ
PO BOX 4077
PORTLAND ME 04101

Dezurich

04112-0287

JOHN CIRALDO ESQ
PO BOX 9729
PORTLAND ME 04104

John Crane Inc

= COURTS
nd County
ox 287
1e 04112-0287

MICHAEL SAUCIER ESQ
PO BOX 4630
PORTLAND ME 04112

WLB
HOlding