2011 ME 26

**Mary STEWART–DORE**

v.

**WEBBER HOSPITAL ASSOCIATION.**

Supreme Judicial Court of Maine.

Argued: Jan. 13, 2011.
Decided: March 3, 2011.

Guy D. Loranger, Esq. (orally), Nichols, Webb & Loranger, P.A., Saco, ME, for Mary Stewart–Dore.

Michael G. Messerschmidt, Esq. (orally), Matthew J. LaMourie, Esq., Preti, Flaher-

ty, Beliveau & Pachios, LLP, Portland, ME, for Webber Hospital Association.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

SILVER, J.

[¶ 1] Mary Stewart–Dore was terminated from her employment as an operating room nurse after more than sixteen years working for Webber Hospital Association, d/b/a Southern Maine Medical Center (Webber). She appeals the entry of summary judgment by the Superior Court (York County, *Fritzsche, J.*) on her complaint of retaliatory discharge in violation of the Maine Whistleblower Protection Act (WPA), 26 M.R.S. §§ 831–840 (2010). We hold that there is a genuine issue of material fact as to whether Stewart–Dore engaged in protected activity under the WPA, and therefore vacate the judgment and remand for further proceedings.

## I. FACTUAL BACKGROUND

[¶ 2] We review the facts in the light most favorable to the appellant. *See Doyle v. Dep't of Human Servs.*, 2003 ME 61, ¶ 8, 824 A.2d 48, 52. Stewart–Dore worked at Southern Maine Medical Center as an operating room nurse from April 1991 until June 5, 2008, when her employment was terminated. In July 2007, Stewart–Dore learned that another nurse was ill with a staph infection. Stewart–Dore administered antibiotics to that nurse as part of the nurse's treatment. Afterward, Stewart–Dore was concerned about the risk of the infection spreading and spoke about it with her supervisors and the infection control nurse, who assured her that it was safe for the other nurse to work.

[¶ 3] The relationship between Stewart–Dore and the other nurse soured after that event and both complained to their supervisors about harassment and immature comments and actions by the other. Stewart–Dore claims that her complaints included allegations that the other nurse would not always relay patient information to her and that this behavior was negatively affecting patient care. In January 2008, the supervisors called in the two nurses to meet with them. In that meeting, the nurses were warned that their personal conflict was becoming a problem.

[¶ 4] Following this meeting, the two nurses had a confrontation in which they bumped together while one was steadying a patient receiving an epidural. The doctor present reported the incident and stated that he was concerned that the tension between the two was starting to affect patient care. The nurses were then told that they would be split in their shift assignments and warned that future problems would result in discipline.

[¶ 5] The nurses continued to complain about each other. Two more incidents followed. The first incident was on April 10, 2008, when the other nurse threw away a chore list that Stewart–Dore had posted. The second incident was on May 29, 2008, when the two disagreed over the proper antibiotic to be given to a patient. On that May date, Stewart–Dore told her supervisor that she wanted to file a formal complaint with the hospital's security manager. Stewart–Dore, the supervisor, and the security manager attended the meeting. Stewart–Dore claims that she told the security manager about what she felt was harassment by the other nurse, "and how it was affecting patient care."

[¶ 6] After the meeting, the supervisor contacted the vice president of human resources and reported that Stewart–Dore told the security manager about the other nurse's earlier staph infection. The vice president interviewed Stewart–Dore who denied disclosing the information. The se-

curity manager, however, confirmed the disclosure. The vice president then terminated Stewart–Dore's employment, noting that it was based on her breach of patient confidentiality. A hospital policy requires termination in cases of "[i]ntentional access, review, and/or disclosure of [protected health information] for purposes other than the care of the patient . . . for personal gain or with malicious intent."

[¶ 7] Stewart–Dore filed a complaint alleging that her termination was in violation of the WPA, and alleging other claims that she does not pursue on appeal. Webber filed a motion for summary judgment. The court granted summary judgment in Webber's favor, holding that there was no issue of material fact regarding whether Stewart–Dore had engaged in protected activity. Stewart–Dore filed this timely appeal.[1]

## II. DISCUSSION

[¶ 8] "We review a summary judgment de novo, viewing the evidence in the light most favorable to the party against whom judgment has been granted" to determine whether the record reveals a genuine issue of material fact and the plaintiff has established a prima facie case as to each element of the claim. *Doyle,* 2003 ME 61, ¶¶ 8–9, 824 A.2d at 52 (quotation marks omitted). A material fact is one that can affect the outcome of the case, and there is a "genuine issue" when there is sufficient evidence for a fact-finder to choose between competing versions of the fact. *See Dyer v. Dep't of Transp.,* 2008 ME 106, ¶ 14, 951 A.2d 821, 825.

[¶ 9] The WPA states:

No employer may discharge . . . an employee . . . because:

. . . .

B. The employee, acting in good faith, . . . reports to the employer or a public body, orally or in writing, what the employee has reasonable cause to believe is a condition or practice that would put at risk the health or safety of that employee or any other individual.

26 M.R.S. § 833(1). An employee is also protected when she reports a deviation from the applicable standard of patient care. 26 M.R.S. § 833(1)(E). The Maine Human Rights Act provides a right of action to employees discharged because of protected activity. 5 M.R.S. §§ 4572(1)(A), 4621 (2010); *Costain v. Sunbury Primary Care, P.A.,* 2008 ME 142, ¶ 6, 954 A.2d 1051, 1053.

[¶ 10] To prevail on a claim pursuant to the WPA, the employee must show: "(1) [s]he engaged in activity protected by the WPA; (2) [s]he experienced an adverse employment action; and (3) a causal connection existed between the protected activity and the adverse employment action." *Currie v. Indus. Sec., Inc.,* 2007 ME 12, ¶ 12, 915 A.2d 400, 404. The court

---

1. Webber raises the issue of procedural violations in Stewart–Dore's appellate briefing. Stewart–Dore submitted a brief and appendix within the filing period, but then subsequently submitted an "amended" brief and appendix after the filing deadline, without seeking leave from the Court or the opposing attorney. The amended brief contained a number of minor citation and font changes, but also added a quotation and contained a reworded paragraph. Maine Rule of Appellate Procedure 7 sets the briefing schedule in this Court. A party is not permitted to file additional brief-ing after the filing deadline without moving the Court for leave to amend or supplement her brief. Additionally, a party may move for an extension of time to file briefs in certain circumstances. M.R.App. P. 7(b). Stewart–Dore did not make any motion under the rules. Because the changes here did not materially affect the content of the brief and therefore did not prejudice Webber, we will allow the substitution of the amended brief in this instance, but caution parties to adhere strictly to the procedural rules.

held that Stewart–Dore had failed to present a genuine issue of material fact with regard to the first element: that she engaged in protected activity. Stewart–Dore contends that she engaged in protected activity through her initial complaints regarding the other nurse's staph infection and through repeated complaints to her supervisors about the other nurse failing to relay patient information and other conditions that endangered patient safety.

[¶ 11] The WPA does not protect every complaint that relates to safety. Rather it protects only complaints made in good faith, and only reports made with reasonable cause to believe a dangerous condition or practice exists. 26 M.R.S. § 833(1)(B). The requirement that a report be made in good faith is met when, for example, a report is motivated by a desire to stop the dangerous condition. *See Currie*, 2007 ME 12, ¶ 27, 915 A.2d at 407. The reasonable cause requirement is met only when the employee presents evidence showing that she had a subjective belief that a dangerous condition or practice existed, and that the belief was objectively reasonable in that "a reasonable person might have believed that" a dangerous condition existed. *Bard v. Bath Iron Works Corp.*, 590 A.2d 152, 154–55 (Me. 1991). The statute additionally reflects a concern about notice to the employer. *See* 26 M.R.S. § 833(2) (requiring, in cases where an employee reports a violation to a public body, that the employee first bring the violation to the attention of the employer and allow a reasonable opportunity to correct it). Vague complaints that do not define the dangerous condition therefore may not meet the statute's requirement of a "report[ ] to the employer." *See* 26 M.R.S. § 833(1)(B).

[¶ 12] We have addressed the protected activity element in other cases with facts that more closely resemble the tradi-tional image of a whistleblower. For example, in *Currie* we held that the employee may have engaged in protected activity when he made reports to the Border Patrol regarding workers whom he believed to be not authorized to work in the United States, and to his employer regarding unsafe driving in the mill yard and the unsafe dumping of paint thinner. 2007 ME 12, ¶¶ 2, 20, 28, 915 A.2d at 402, 406, 407. In *Blake v. State* we similarly affirmed the trial court's conclusion that a material issue of fact existed as to whether the employee engaged in protected activity when the employee reported a co-worker's improper commingling of funds, improper conduct with clients, failure to report suspected abuse as required by law, and improper conduct by a doctor. 2005 ME 32, ¶ 6, 868 A.2d 234, 237.

[¶ 13] Here, Stewart–Dore's complaints, with the exception of those regarding the other nurse's staph infection that occurred earlier in time, are more amorphous than the examples above and are complicated by the fact that Stewart–Dore was a party to the conflict that she alleges was creating a dangerous condition. On review of a grant of summary judgment, however, we view the facts in the light most favorable to Stewart–Dore. *See Doyle*, 2003 ME 61, ¶ 8, 824 A.2d at 52. There is conflicting testimony as to what Stewart–Dore reported in her repeated complaints to her supervisors, and whether those complaints were a good faith effort to report what she reasonably believed was a dangerous condition or practice at the hospital. The evidence presented was sufficient to raise a genuine issue of material fact with regard to whether Stewart–Dore engaged in protected activity. We therefore vacate the court's grant of summary judgment.

The entry is:

Judgment vacated. Remanded for further proceedings consistent with this opinion.